IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| TENNESSEE CLEAN WATER NETWORK, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 2:14-cv-336 ) |
| U.S. DEPARTMENT OF DEFENSE, CHUCK HAGEL, in his official capacity as Secretary of the U.S. Department of Defense, and BAE SYSTEMS ORDNANCE SYSTEMS, INC., | ) ) ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT

Plaintiff Tennessee Clean Water Network, by and through its undersigned counsel, alleges as follows:

### NATURE OF THE CASE

1. This is a citizen's suit, brought pursuant to Section 505(a)(1) of the federal Clean Water Act ("CWA" or "the Act"), as amended, 33 U.S.C. § 1365(a)(1), to address violations of the CWA by Defendants arising out of their operation of the Holston Army Ammunitions Plant ("HSAAP") located in Kingsport, Tennessee. In particular, Defendants have discharged Research Department Explosive ("RDX"), a synthetic pollutant and possible human carcinogen, to the Holston River well in excess of the health-based limitation imposed by National Pollutant Discharge Elimination System ("NPDES") Permit TN0003671 each and every month since the limit became effective in May 2012. Moreover, the HSAAP's discharge of RDX is located upstream from several municipal drinking water intakes, including the First Utility District of

1

Hawkins County, located just 10 miles downstream, and Morristown Utility Systems, located 67 miles downstream. RDX has been found in the finished drinking water supply of the First Utility District of Hawkins County above health advisory levels as recently as 2014. In addition to these troubling RDX violations, Defendants are also in violation of other terms and conditions of TN0003671, including effluent limitations regarding biochemical oxygen demand, and the requirement to properly operate and maintain treatment facilities at the HSAAP, which has resulted in prohibited overflows and bypasses and other spills and leaks of hazardous chemicals. Finally, Defendants have violated the terms and conditions of the NPDES Tennessee Storm Water Multi Sector Permit for Industrial Activities, Permit No. TNR050000 ("TMSP"), through prohibited nonstormwater discharges at the HSAAP. Plaintiff seeks a declaratory judgment, injunctive relief, the imposition of civil penalties against Defendant BAE, the imposition of coercive sanctions against Defendant DOD, and the award of costs of litigation, including but not limited to attorney and expert witness fees, for Defendants' chronic, egregious, and ongoing violations of the CWA at the HSAAP, and further seek to compel compliance with Defendants' NPDES Permit, TMSP Permit, and the CWA.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over the CWA claims set forth in this Complaint pursuant to Section 505(a) of the CWA, 33 U.S.C. § 1365(a), and 28 U.S.C. § 1331.

3. Plaintiff has complied with the pre-suit notice provisions of the CWA. Pursuant to Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Plaintiff, on September 15, 2014, mailed a notice of intent to file suit under the CWA to address the violations at the Holston Army Ammunition Plant to the named Defendants, the Administrator of the U.S. Environmental Protection Agency ("EPA"), the Regional Administrator of the EPA, the Commissioner of the

Tennessee Department of Environment and Conservation ("TDEC"), the United States Attorney General, and others ("September Notice") (Attached hereto as Exhibit "A" and incorporated by reference herein). The September Notice complied with 33 U.S.C. § 1365(b)(1)(A) and with 40 C.F.R. Part 135, Subpart A. More than 60 days have passed since the mailing of the September Notice.

4. Neither EPA nor TDEC has commenced, nor are they diligently prosecuting, a civil or criminal action in a court of the United States to redress the violations of the CWA by Defendants at the HSAAP.

5. Neither EPA nor TDEC has commenced, nor are they diligently prosecuting, an administrative penalty action under Section 309(g) of the CWA, 33 U.S.C. § 1319(g), or under a comparable Tennessee law, to redress the violations of the CWA by Defendants at the HSAAP.

6. Plaintiff will, pursuant to Section 505(c)(3) of the CWA, 33 U.S.C. § 1365(c)(3), upon receipt of a file stamped copy of this Complaint, mail a copy of this Complaint to the Administrator of the Environmental Protection Agency, the Attorney General of the United States, and the Regional Administrator of the EPA Region in which the violations are alleged to have occurred.

7. Venue is appropriate in the Eastern District of Tennessee, pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial district.

## PARTIES

8. Plaintiff Tennessee Clean Water Network ("TCWN") is a nonprofit corporation organized under the laws of the State of Tennessee, with its principal office in Knoxville, Tennessee. TCWN empowers Tennesseans to exercise their right to clean water and healthy

communities by fostering civic engagement, building partnerships and advancing and when necessary, enforcing water policy for a sustainable future. TCWN was organized for, among other reasons: to advocate for strong policies and programs that result in more effective protection and restoration of Tennessee waters; to educate organizations, decision-makers, and the public about important water resource issues; and to ensure the protection and restoration of Tennessee's waters. TCWN is a membership organization, and has members who are injured by the violations alleged herein, including members who live, work, and/or recreate on the Holston River downstream from the Holston Army Ammunition Plant discharges, and have recreational, property, health, and aesthetic interests in these waters.

9. Members of TCWN have been, and will continue to be, directly and substantially injured in their use and enjoyment of their property and/or in their recreational, health, and aesthetic enjoyment of waters downstream from the Holston Army Ammunition Plant discharge(s) as a direct result of Defendants' violations of the CWA. The relief sought in this case would provide redress for these injuries. Additionally, because these injuries are being caused by the unlawful discharge of pollutants to waters of the United States, these injuries fall within the zone of interests protected by the CWA.

10. Plaintiff TCWN is a "citizen" within the meaning of 33 U.S.C. §§ 1365(g) and 1365(a).

11. Defendant BAE Systems Ordnance Systems, Inc. ("BAE") is a for profit corporation organized under the laws of the State of Delaware, and is the operator of the Holston Army Ammunition Plant located at 4509 West Stone Drive, Kingsport, Tennessee, 37660. BAE is a global defense, security, and aerospace corporation with multiple contracts with Defendant DOD. BAE's registered agent for service of process in Tennessee is CT Corporation System, Suite 2021, 800 S. Gay Street, Knoxville, Tennessee, 37929-9710.

4

12. Defendant BAE is a "person" within the meaning of 33 U.S.C. §§ 1362(5) and 1365(a)(1).

13. Defendant U.S. Department of Defense ("DOD") is an agency of the United States government, and includes the Department of the Army ("Army"), which is the owner of the HSAAP. DOD is charged with coordinating and supervising all agencies and functions of the government relating to national security and the U.S. armed forces, and is highly involved in the decision-making and funding related to the HSAAP's compliance with the CWA, including production levels and wastewater treatment.

14. Defendant DOD is a person within the meaning of 33 U.S.C. § 1365(a)(1). DOD is subject to all federal and state requirements, administrative authority, and process and sanctions respecting the control and abatement of water pollution in the same manner, and to the same extent, as any nongovernmental entity. 33 U.S.C. § 1323(a); *U.S. Dep't of Energy v. Ohio*, 503 U.S. 607 (1992).

15. Defendant Chuck Hagel is the Secretary of Defense, and as such is responsible for compliance with the CWA. Defendant Hagel is a person within the meaning of 33 U.S.C. § 1365(a)(1).

## STATUTORY BACKGROUND

16. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants from a point source into waters of the United States unless the discharge is in compliance with various enumerated sections of the CWA. Among other things, Section 301(a) prohibits such discharges not authorized by, or in violation of the terms of, a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

5

17. The State of Tennessee has been delegated the authority to implement the permitting programs of the Act by EPA, including the NPDES permit program, pursuant to 33 U.S.C. § 1342(b). TDEC is the water pollution control agency for purposes of the Act, and has drafted regulations pursuant to that authority implementing the Act's permitting programs within the State of Tennessee. *See* Tenn. Code Ann. § 69-3-105(h)(1).

18. The Federal facilities provision of the CWA, 33 U.S.C. § 1323, waives sovereign immunity of federal agencies, departments, and instrumentalities, and renders them amenable to enforcement actions for violations of the CWA and of federally sanctioned state environmental laws. Federal agencies are subject to injunctions and coercive fines, but not to civil penalties for past violations. *See U.S. Dep't of Energy v. Ohio*, 503 U.S. 607 (1992).

19. A violation of an NPDES permit issued by TDEC is a violation of the Tennessee Water Quality Control Act of 1977 ("TWQCA"), Tenn. Code Ann. §§ 69-3-101, *et seq.*, TDEC rules, including Chapter 400-40-05, and the CWA.

20. A citizen suit, pursuant to 33 U.S.C. § 1365(a)(1), may be brought for violations of the terms and conditions of NPDES permits, as well as for discharges of pollutants from a facility into waters of the United States without a valid NPDES permit. 33 U.S.C. § 1365(f).

**GENERAL ALLEGATIONS**

21. Defendant DOD, through the Army, owns, and Defendant BAE operates, the HSAAP, which is situated on over 6,000 acres near the Holston River in Sullivan and Hawkins Counties, Tennessee. The plant sits on two sites: Area A located in Kingsport and Area B approximately 4 miles away in a less developed part of Hawkins County. The two plants are connected by rail, and the HSAPP contains no fewer than 450 building used for various explosive production and storage purposes.

22. The HSAAP manufactures a wide range of secondary detonating explosives for Defendant DOD, including Research Department Explosive and High Melt Explosive ("HMX"), for use in warheads of all types of bombs, missiles, artillery shells, mortars, and fuses. RDX and HMX are utilized by Defendant DOD as basic explosives for munitions and tactical missiles, as well as propellants for strategic missiles.

23. RDX is a secondary explosive used extensively by the U.S. military in the manufacturing of explosives. RDX is a highly explosive synthetic pollutant which does not occur naturally in the environment, and is classified by EPA as a possible human carcinogen. RDX accounts for a large part of the explosives contamination at active and former U.S. military installations.

24. EPA has established a lifetime health advisory guidance level of 2 micrograms per liter ("µg/L") for RDX in drinking water. For RDX in tap water, EPA has established a screening level of 0.61 µg/L.

25. The HSAAP is covered under NPDES Permit No. TN0003671 ("NPDES Permit"), which authorizes the discharge of treated wastewater and other waste streams from numerous outfalls at the HSAAP to the Holston River and South Fork Holston River, as well as tributaries to the South Fork Holston River, including Madd Branch, AFG Stream, and Arnott Branch, so long as such discharges are in compliance with the terms and conditions of the NPDES Permit.

26. The HSAAP is also covered under the NPDES Tennessee Storm Water Multi Sector Permit for Industrial Activities, Permit No. TNR 050000, and is registered under tracking number TNR 053962 ("TMSP"). The TMSP authorizes Defendants to discharge stormwater associated with industrial activity from at least 86 outfalls to the Holston River and South Fork Holston River, as well as tributaries to the South Fork Holston River, including Madd Branch,

7

AFG Stream, and Arnott Branch, so long as such discharges are in compliance with the terms and conditions of the TMSP.

27. HSAAP has a Standard Industrial Classification ("SIC") Code of 2892 and thus is also subject to the requirements of Sector L of the TMSP.

28. The Holston River, the South Fork Holston River, as well as the tributaries to the South Fork Holston River, are waters of the State of Tennessee and "waters of the United States" as that term is used in the CWA and as it has been interpreted by federal courts.

29. The HSAAP discharges treated industrial wastewater containing RDX and other pollutants from Outfall 020 directly to the Holston River at river mile 141.5. Outfall 020 is the outfall for the HSAAP's main industrial wastewater treatment plant, known as the "IWWTF."

30. The Holston River is designated by the State of Tennessee for use as domestic water supply from river mile 131.5 to its confluence with the French Broad River. *See* Tenn. Comp. R. & Regs. 0400-40-.04(11). Several municipal drinking water intakes are located downstream on the Holston River from Outfall 020 at the HSAAP, including the First Utility District of Hawkins County ("FUDH"), which is 10 miles downstream, and Morristown Utility Systems, which is 67 miles downstream. TDEC further classifies the Holston River for fish and aquatic life, recreation, livestock watering & wildlife, and irrigation uses at the point of discharge, and for industrial water supply beginning at river mile 131.5. *See* Tenn. Comp. R. & Regs. 0400-40-.04(11).

31. Approximately 10 years ago, Defendants first investigated the presence of RDX and other explosives in discharges from the HSAAP, including the IWWTF, as well as downstream locations. The downstream samples, taken at the HSAAP Area B boundary, in Cherokee Lake (67 miles downstream), and below the Cherokee Dam (91 miles downstream), all showed the presence of RDX ranging from 0.37 to 4.2 µg/L. Because RDX in concentrations as high as 1.6

8

µg/L was found 91 miles downstream in the initial sampling, an additional sampling point was added in the Holston River just above the confluence with the French Broad River near Knoxville. Subsequent sampling confirmed the consistent and chronic presence of RDX in the IWWTF discharge and the Holston River.

32. In May 2007, TDEC issued a modified NPDES Permit for the HSAAP that set a monthly average effluent limitation of 12.2 lbs/day for discharges of RDX from Outfall 020. This limitation was calculated based on the Holston River's classified use as a drinking water supply and EPA's drinking water health guidance level of 2 µg/L.

33. The 2007 NPDES Permit provided a five-year compliance schedule to allow Defendants time to install treatment equipment before this health-based limitation of 12.2 lbs/day actually took effect on May 1, 2012.

34. During this five-year compliance period, Defendants took some actions to reduce the RDX discharge from the HSAAP; however, said actions were not sufficient to meet the 12.2 lbs/day health-based limitation.

35. In November of 2012, Defendants reactivated a long-dormant production line at the HSAAP, the Magnesium Nitrate Nitric Acid Concentration Plant ("Maggie"). The reactivation of Maggie coincided with an increase in RDX discharges.

36. In March and April of 2014, RDX in concentrations well above 2 µg/L was found in all five samples taken of FUDH's finished drinking water. As recently as June 3, 2014, RDX was found in the Holston River at the Morristown drinking water intake at a concentration of 2 µg/L. In fact, RDX has been found in the Holston River as far as 143 miles downstream of the HSAAP, just above the confluence with the French Broad River.

37. The final compliance date for Defendants to comply with the health-based limitation of 12.2 lbs/day was May 1, 2012. Defendants have significantly exceeded this limit each and every month since May of 2012.

38. In the fall of 2013, TDEC permit writer Julie A. Harse, P.E., gave a presentation expressing concerns about the lack of progress toward Defendants meeting the 12.2 lbs/day limitation on RDX discharges from the HSAAP. According to Ms. Harse, average RDX loading at the HSAAP in 2007 was 61.6 lbs/day, and that, despite the five year compliance schedule, average loading in 2012-2013 had increased to 68.2 lbs/day.

39. Only July 9, 2014, Ms. Harse wrote a letter to TDEC's Director of the Division of Water Resources formally removing herself as the permit writer for the HSAAP NPDES permit, citing her ethical obligations as a professional engineer to protect the safety, health, and welfare of the public, the lack of progress towards RDX compliance, the increased discharge of RDC during the compliance period, the documented presence of RDX in the finished drinking water supply for FUDH, and TDEC's failure to issue an enforcement order to Defendants.

40. On August 27, 2014, TDEC entered into a "Compliance Agreement" with the Department of the Army and Defendant BAE, which provides that the "Army and BAE shall continue to use their best efforts to address issues relating to the RDX treatment system."

41. This Compliance Agreement is not an enforceable order, imposes no penalties for the HSAAP's failure to comply with the health-based RDX limitation, imposes no enforceable corrective action obligations, and does not relieve Defendants of the mandatory requirement in the NPDES Permit to comply with the 12.2 lbs/day health-based limitation on RDX discharges from the HSAAP as of May 1, 2012.

10

Case 2:14-cv-00336-RLJ   Document 1   Filed 11/17/14   Page 10 of 17   PageID #: 10

42. In addition to the health-based RDX limitation, Part I.A. of the NPDES Permit sets several effluent limitations for discharges of Biochemical Oxygen Demand ("BOD5") from Outfall 020 of the HSAAP. For Tier I production, the NPDES Permit limits discharges of BOD5 to a daily maximum limit of 505 lbs/day and a monthly average of 188 lbs/day. For Tier 2 production, the NPDES Permit limits discharges of BOD5 to a monthly average of 489 lbs/day.

43. Part II.C. of the NPDES Permit prohibits overflows, which are defined as "the discharge to land or water of wastes from any portion of the collection, transmission, or treatment system other than through permitted outfalls."

44. Part II.C. of the NPDES Permit prohibits bypasses, which are defined as "the intentional diversion of wastewater away from any portion of a treatment facility," unless three specified conditions are met.

45. Part II.A of the NPDES Permit provides that "The Permittee shall at all times properly operate and maintain all facilities and systems (and related appurtenances) for collection and treatment which are installed or used by the permittee to achieve compliance with the terms and conditions of this permit." This requirement also includes "adequate laboratory and process controls and appropriate quality assurance procedures."

46. Part II.C. of the NPDES Permit provides that "All discharges shall be consistent with the terms of this permit. Any permit noncompliance constitutes a violation of applicable State and Federal laws and is grounds for enforcement action, permit termination, permit modification, or denial or permit reissuance."

47. The TMSP, which governs discharges via stormwater outfalls at the HSAAP, provides in Part 3.1.1 that "[a]ll discharges covered under this Permit shall be composed entirely of

11

stormwater," and Part 3.1.2 requires that "[D]ischarges of material other than stormwater must be in compliance with an NPDES Permit (other than the TMSP) issued for the discharge."

48. Part 3.2.3 of the TMSP provides "This permit does not authorize the discharge of hazardous substances or oil resulting from an onsite spill."

49. Part 7.1 of the TMSP requires Defendants to comply with all conditions of the TMSP, and provides that "[A]ny permit noncompliance constitutes a violation of the Clean Water and/or the Tennessee Water Quality Act …."

50. Defendants routinely report overflows, bypasses, spills and leaks at the HSAAP facility, all of which are violations of the terms and conditions of the NPDES Permit and/or the TMSP Permit and the CWA.

51. Defendants routinely fail to properly conduct and report sampling and laboratory analyses at the HSAAP in violation of the terms and conditions of the NPDES Permit and the CWA.

52. The September Notice, attached hereto as Exhibit "A," sets out in detail the violations by Defendants of the NPDES Permit and the TMSP arising from their ownership and operation of the HSAAP. The September Notice is incorporated by reference herein in its entirety.

53. The violations by Defendants of the NPDES Permit and the TMSP set out in the September Notice arising out of Defendants' ownership and operation of the HSAAP are continuing and ongoing, or are likely to recur, as of the date of this Complaint.

**CLAIMS**

**COUNT 1: VIOLATION OF THE TERMS OF NPDES PERMIT NO. TN0003671 IN VIOLATION OF THE CLEAN WATER ACT**

54. Paragraphs 1- 53 of this Complaint are hereby realleged and incorporated by reference herein.

55. As set forth in the September Notice attached hereto as Exhibit A and incorporated by reference herein, and as demonstrated by Defendant BAE's own certified Discharge Monitoring Reports ("DMRs") submitted to TDEC, Defendants have violated Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, as well as Tennessee statutes and rules implementing the CWA, by repeatedly discharging RDX from Outfall 020 in amounts significantly in excess of the health-based limitation of 12.2 lbs/day in each and every month from May of 2012 through July of 2014.

56. As set forth in the September Notice attached hereto as Exhibit A and incorporated by reference herein, and as demonstrated by Defendant BAE's own certified Discharge Monitoring Reports ("DMRs") submitted to TDEC, Defendants have violated Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, as well as Tennessee statutes and rules implementing the CWA, by repeatedly discharging BOD5 from Outfall 020 in excess of both daily maximum and monthly average limitations between January of 2010 and March of 2014.

57. As set forth in the September Notice attached hereto as Exhibit A and incorporated by reference herein, Defendants have violated Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, as well as Tennessee statutes and rules implementing the CWA, due to prohibited overflows in violation of Part II.C. of the NPDES Permit.

58. As set forth in the September Notice attached hereto as Exhibit A and incorporated by reference herein, Defendants have violated Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, as well as Tennessee statutes and rules implementing the CWA, due to prohibited bypasses in violation of Part II.C. of the NPDES Permit.

59. As set forth in the September Notice attached hereto as Exhibit A and incorporated by reference herein, Defendants have violated Sections 301(a) and 402 of the CWA, 33 U.S.C. §§

13

1311(a) and 1342, as well as Tennessee statutes and rules implementing the CWA, by failing to properly operate and maintain all facilities and systems at the HSAAP relating to collection and treatment of wastewater resulting in prohibited overflows, bypasses, spills and leaks, as well as by failing to properly conduct and report sampling and laboratory analyses as required by the NPDES Permit.

60. Defendants should be subject to an enforcement order or injunction ordering them to immediately cease their violations of the NPDES Permit.

61. Defendant BAE should be subject to the assessment of civil penalties for these permit violations pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365.

62. Defendant DOD should be subject to the assessment of coercive sanctions as part of a Compliance Order of Injunction, pursuant to Sections 313(a) & 505 of the CWA, 33 U.S.C. §§ 1323(a) & 1365, to induce and ensure immediate compliance with the CWA.

63. For the purpose of assessing the maximum penalty for which Defendant BAE is liable, each day of violation of each effluent standard or limitation constitutes a separate violation of Section 301(a) of the CWA, pursuant to Section 309(d), 33 U.S.C. § 1319(d).

**COUNT 2: VIOLATION OF THE TERMS OF TMSP NO. TNR053962 IN VIOLATION OF THE CLEAN WATER ACT**

64. Paragraphs 1- 63 of this Complaint are hereby realleged and incorporated by reference herein.

65. As set forth in the September Notice attached hereto as Exhibit A and incorporated by reference herein, Defendants have violated Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, as well as Tennessee statutes and rules implementing the CWA, through spills, leaks, and other nonstormwater discharges, including discharges of hazardous pollutants, via stormwater outfalls in violation of Parts 3.1.1, 3.1.2, and 3.2.3 of the TMSP.

66. Defendants should be subject to an enforcement order or injunction ordering them to immediately cease their violations of the NPDES Permit.

67. Defendant BAE should be subject to the assessment of civil penalties for these permit violations pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365.

68. Defendant DOD should be subject to the assessment of coercive sanctions as part of a Compliance Order of Injunction, pursuant to Sections 313(a) & 505 of the CWA, 33 U.S.C. §§ 1323(a) & 1365, to induce and ensure immediate compliance with the CWA.

69. For the purpose of assessing the maximum penalty for which Defendant BAE is liable, each day of violation of each effluent standard or limitation constitutes a separate violation of Section 301(a) of the CWA, pursuant to Section 309(d), 33 U.S.C. § 1319(d).

### COUNT 3 – DISCHARGE OF POLLUTANTS TO SURFACE WATERS WITHOUT AN NPDES PERMIT IN VIOLATION OF THE CWA.

70. Paragraphs 1-69 of this Complaint are hereby realleged and incorporated by reference herein.

71. Defendants' discharges, via overflows, bypasses, spills, and leaks, of industrial wastewater and hazardous materials from various locations at the HSAAP into the Holston River, the South Fork Holston River, as well as the tributaries to the South Fork Holston River, constitute the discharge of pollutants from a point source requiring an NPDES Permit.

72. As set forth in the September Notice attached hereto as Exhibit A and incorporated by reference herein, Defendants have violated Sections 301(a) of the CWA, 33 U.S.C. § 1311(a), by discharging industrial wastewater and hazardous materials into the Holston River, the South Fork Holston River, as well as the tributaries to the South Fork Holston River without a permit authorizing said discharges.

15

73. Defendants should be subject to an enforcement order or injunction ordering them to immediately cease their unpermitted discharges in violation of the CWA.

74. Defendant BAE should be subject to the assessment of civil penalties for these permit violations pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365.

75. Defendant DOD should be subject to the assessment of coercive sanctions as part of a Compliance Order of Injunction, pursuant to Sections 313(a) & 505 of the CWA, 33 U.S.C. §§ 1323(a) & 1365, to induce and ensure immediate compliance with the CWA.

76. For the purpose of assessing the maximum penalty for which Defendant BAE is liable, each day of violation of each effluent standard or limitation constitutes a separate violation of Section 301(a) of the CWA, pursuant to Section 309(d), 33 U.S.C. § 1319(d).

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

a. Enter a declaratory judgment that Defendants have violated, and are in violation of, the CWA, 33 U.S.C. §§ 1311(a) and 1342;

b. Order or Enjoin Defendants to immediately cease the discharge of pollutants from point sources into water of the United States without an NPDES Permit authorizing such discharges;

c. Order Defendants to immediately comply with all terms and conditions of coverage under its NPDES Permit;

d. Order Defendants to immediately comply with all terms and conditions of coverage under the TMSP;

e. Order Defendants to immediately take such steps as are necessary and proper to remedy the harm caused by their violations of the CWA;

f. Order Defendant BAE to pay civil penalties of up to thirty-seven thousand five hundred dollars ($37,500) per day for each violation of the CWA set out in this Complaint pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365;

g. As part of a Compliance Order or Injunction, impose coercive fines on DOD sufficient to induce and ensure immediate compliance with the CWA at the HSAAP; and

h. Award Plaintiff its costs of litigation, including reasonable attorney and expert witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d); and

i. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted, this the 17th day of November, 2014.

*/s/ Stephanie Durman Matheny*
Stephanie Durman Matheny (BPR# 027783)
TENNESSEE CLEAN WATER NETWORK
P. O. Box 1521
Knoxville, TN 37901
Telephone: (865) 522-7007 x102
stephanie@tcwn.org

*/s/ Gary A. Davis*
Gary A. Davis (BPR# 009766)
James S. Whitlock (NC Bar # 34304)
*Admission Requested Pro Hac Vice*
DAVIS & WHITLOCK, P.C.
21 Battery Park Avenue, Suite 206
Asheville, NC 28801
Telephone: (828) 622-0044
gadavis@enviroattorney.com
jwhitlock@enviroattorney.com

**Attorneys for Plaintiff TCWN**