JOHN C. CRUDEN, Assistant Attorney General
SAMARA M. SPENCE, Trial Attorney (BPR No. 031484)
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 7611, Washington, DC 20044-7611
(202) 514-2285
samara.spence@usdoj.gov
*Attorney for Federal Defendants*

STEPHANIE A. DURMAN (BPR No. 027783)
Tennessee Clean Water Network
P.O. Box 1521, Knoxville, TN 37901
(865) 522-7007 x102
stephanie@tcwn.org
GARY A. DAVIS (BPR No. 009766)
JAMES S. WHITLOCK (N.C. Bar No. 34304)
Davis & Whitlock, P.C.
21 Battery Park Ave., Ashville, NC 28801
(828) 622-0044; (828) 398-0435
gadavis@enviroattorney.com; jwhitlock@enviroattorney.com
*Attorneys for Plaintiff Tennessee Clean Water Network*

MICHAEL K. STAGG (BPR No. 017159)
Waller Landsden Dortch & Davis, LLP
511 Union St., Ste. 2700, Nashville, TN 37219
(615) 244-6380
michael.stagg@wallerlaw.com
*Attorney for BAE Systems*

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE AT GREENVILLE

| | |
|---|---|
| TENNESSEE CLEAN WATER NETWORK )<br>Plaintiff, )<br>v. )<br>U.S. DEPARTMENT OF DEFENSE, )<br>ASHTON CARTER, in his official capacity )<br>as Secretary of the U.S. Department of )<br>Defense, and BAE SYSTEMS )<br>ORDNANCE SYSTEMS, INC., )<br>Defendants. )<br>_____ ) | Civil Action No. 2:14-cv-336<br>**CONSENT DECREE** |

[PROPOSED] CONSENT DECREE
1

## I. BACKGROUND AND INTRODUCTION

WHEREAS, on November 17, 2014, Plaintiff Tennessee Clean Water Network (TCWN) filed a complaint in this Court, alleging that Defendants United States Department of Defense and the Secretary of the United States Department of Defense (Federal Defendants) and Defendant BAE Systems Ordnance Systems, Inc. (BAE Systems) are in violation of the Clean Water Act (CWA) with respect to the operation of the Holston Army Ammunition Plant in Kingsport, Tennessee (HSAAP). Plaintiff's complaint seeks declaratory and injunctive relief against all Defendants, civil penalties against BAE Systems, and attorney's fees and costs. Plaintiff and Defendants are hereafter collectively referred to as the "Parties";

WHEREAS, the HSAAP is owned by the United States Army, which is part of the United States Department of Defense. BAE Systems operates and maintains the HSAAP pursuant to a contractual arrangement with Army;

WHEREAS, the HSAAP manufactures Research Department Explosive (RDX) and other explosives considered by Federal Defendants to be essential to the mission of the Department of Defense. The HSAAP is the only RDX production facility in the United States and the only supplier of RDX to the United States Department of Defense. RDX and other explosives production amounts at the HSAAP are established by the Department of Defense on an interval basis, based on military and national defense needs;

WHEREAS, the United States Environmental Protection Agency has established a health advisory limit for RDX in drinking water of 2 parts per billion (ppb);

WHEREAS, BAE Systems holds National Pollutant Discharge Elimination System (NPDES) Permit No. TN0003671, which authorizes the discharge of certain pollutants from HSAAP into the Holston River. In 2007, the Tennessee Department of Environment and Conservation (TDEC) modified Permit No. TN0003671 to limit RDX discharge from Outfall 020, the primary outfall from the HSAAP Industrial Waste Water Treatment Plant (IWWTP), to a monthly average of 12.2 pounds per day. The new limit became effective May 1, 2012. The permit included an interim daily maximum RDX limit of 175 pounds per day.

WHEREAS, between 2007 and 2012, Army coordinated and funded at a reported cost of approximately $43 million a team, which included multiple Army commands, BAE Systems, the Army Corps of Engineers, and outside consultants, to research, develop, design, and construct a treatment system for RDX at the HSAAP. This project included analysis of ten different potential treatment technologies, bench scale testing of certain technologies, and construction and implementation of a point-source reverse osmosis system to pre-treat wastewater from the six primary RDX process buildings, which had been identified as the primary sources of RDX effluent at the HSAAP. BAE has determined that the reverse osmosis system pre-treats 70,000 to 80,000 gallons of wastewater per day and removes approximately 100 pounds of RDX per day before the wastewater is routed to the centralized IWWTP;

WHEREAS, Plaintiff alleges that Defendants have discharged RDX in excess of 12.2 pounds per day average each month from May 2012 through July 2014, in violation of NPDES Permit No. TN0003671, and in violation of CWA Sections 301(a) (33 U.S.C. § 1311(a)) and 402 (33 U.S.C. § 1342(a)), and that the alleged violations are ongoing;

WHEREAS, in early 2013, Army and BAE Systems determined that highly variable sources of RDX from other buildings, meaning those buildings not plumbed to the reverse osmosis system, could not be sufficiently treated with the existing IWWTP. Beginning in September 2013, a team including Army, BAE Systems, and outside consultants conducted a full-scale pilot evaluation to assess whether upgrades to the IWWTP could effectively treat RDX from all sources at the HSAAP and maintain effluent levels below the permit limit under both current and potential future circumstances. The Army/BAE design team concluded that additional anoxic suspended growth basins would be effective and designed an upgrade to the IWWTP that will, when fully operational, remove up to 344 pounds of RDX from up to 6 million gallons of wastewater per day, both well above current rates. The design includes 3.2 million gallons of additional anoxic suspended growth basins; features to maintain predictable performance, including acetic acid nutrient feed, periodic wasting of biosolids with clarifiers, and equalization basins to control retention time; and multi-media filters. The team determined that an overall upgrade to the IWWTP was the optimal design solution because central treatment

ensures that all sources of RDX will be accommodated and because it will also improve treatment of other potential contaminants. Army engineers have a high confidence that, based on modelling under full-scale pilot evaluation conditions using real process water, the HSAAP will meet the RDX permit limit once all design elements are installed;

WHEREAS, a team of Army and BAE Systems personnel established an interval construction schedule for the designed upgrades to the IWWTP with an overall completion date of February 2020. The Army/BAE construction schedule is based on the anticipated detailed engineering and construction timeframe, the need to keep the IWWTP operational during construction, the need for staggered construction to maintain safety standards in an explosive environment, the Department of Defense budget process, government contract bidding and contracting procedures, and Department of Defense safety reviews;

WHEREAS, on August 27, 2014, Army and BAE Systems entered into a Compliance Agreement with TDEC with the stated purpose to implement a plan of action to resolve issues related to treatment of RDX waste streams at HSAAP. The Compliance Agreement requires Army and BAE Systems to implement 14 tasks listed in Exhibit A to the agreement, each with a specific start date and deadline for completion. Twelve of the 14 tasks require Army and BAE Systems to obtain detailed designs and to construct the previously designed upgrade to the IWWTP. The tasks also include a condition study to evaluate the integrity of the wastewater sewer system in the explosive manufacturing portion of the site, known as "Area B," and a study to evaluate the possibility of recycling treated water back into the manufacturing process. All 14 tasks are scheduled to be completed by February 2020. Army estimates that it will spend over $80 million on the tasks outlined in Exhibit A of the Compliance Agreement;

WHEREAS, Defendants intend to perform specific tasks according to the requirements and construction schedule of the Compliance Agreement, subject to any modifications approved by TDEC. Army and BAE Systems report that they are on or ahead of schedule for each task listed in Exhibit A of the Compliance Agreement. Contracts have been awarded for tasks 1, 2, 3, and 6;

WHEREAS, in addition to the fourteen tasks listed on Exhibit A, the Compliance Agreement requires BAE Systems to fabricate and install a pilot granular activated carbon (GAC) unit on Building L8, the largest source of RDX wastewater not plumbed to the reverse osmosis system. The Compliance Agreement further requires BAE Systems to evaluate the feasibility of reusing filter cloth wash water at Buildings E3 and E6, two other sources of RDX not plumbed to the reverse osmosis system;

WHEREAS, BAE Systems has completed the GAC treatment pilot study at Building L8, achieving a 60% reduction to the RDX loading from Building L8 using hydraulic reduction and physical bag filtration, and has placed the system in full-time service. BAE Systems completed evaluation of filter cloth wash water recycling at Buildings E3 and E6 and began operating the recycling system full-time in 2014. BAE Systems estimates that the recycling system removes 100-200 pounds per week of RDX loading from Buildings E3 and E6 and has contributed to a downward trend in RDX discharge at Outfall 020;

WHEREAS, The Compliance Agreement also requires BAE Systems to make five annual payments of $20,000 each to the First Utility District of Hawkins County (Utility District) to fund activated carbon treatment of drinking water at the Utility District. TDEC agreed to treat BAE Systems' payments to the Utility District as a Supplemental Environmental Project (SEP). BAE Systems has made all previously due annual payments to the Utility District, per the requirements of the Compliance Agreement;

WHEREAS, BAE Systems has taken additional steps to reduce RDX discharge at Outfall 020 in the interim before the designed upgrade to the IWWTP is complete. An existing IWWTP Anoxic Filter Upgrade Project, which BAE System anticipates will increase existing RDX reduction efficiency by 10 to 15%, is more than 50% complete. BAE Systems began a study in July 2015 to identify other buildings for installation of an RDX filtration system similar to that installed at Building L8. BAE Systems has completed a new catch basin screening design to reduce solids entering the catch basins. BAE Systems is also implementing process improvements to reduce the amount of RDX discharged to the IWWTP;

[PROPOSED] CONSENT DECREE
5
Case 2:14-cv-00336-RLJ-MCLC   Document 26   Filed 10/01/15   Page 5 of 19   PageID #: 149

WHEREAS, TCWN takes no position regarding the appropriate treatment technology to remove RDX from the HSAAP discharges and instead seeks a date certain for compliance with the Permit's RDX limit;

WHEREAS, Plaintiff further alleges that Defendants have discharged Biochemical Oxygen Demand (BOD5) in excess of the daily maximum and monthly average limits in NPDES Permit No. TN0003671 between January 2010 and March 2014 in violation of CWA Sections 301(a) (33 U.S.C. § 1311(a)) and 402 (33 U.S.C. § 1342(a));

WHEREAS, in March 2014 a team including Army, BAE Systems, and a third-party environmental consultant investigated BOD5 concerns and instituted new procedures to de-synchronize loading on the IWWTP to address the issue. Except for one instance related to an upset in September 2014, Outfall 020 has experienced no BOD5 exceedances since this new procedure was instituted. The planned upgrades to the IWWTP, as outlined in the Compliance Agreement, are expected to prevent any residual risk of BOD5 exceedances due to upsets or other unpredictable causes;

WHEREAS, BAE Systems has obtained permission from TDEC to operate the HSAAP under the NPDES Tennessee Storm Water Multi Sector Permit for Industrial Activities (TMSP) Permit No. TNR050000 (individual tracking number TNR053962);

WHEREAS, Plaintiff also alleges that Defendants have violated NPDES Permit No. TN0003671, TMSP Permit No. TNR050000 (individual tracking number TNR053962), and have discharged pollutants without a permit attributable to various past spills, leaks, overflows and bypasses at the HSAAP in violation of CWA Sections 301(a) (33 U.S.C. § 1311(a)) and 402 (33 U.S.C. § 1342(a));

WHEREAS, BAE Systems has taken and is in the process of pursuing a number of corrective actions and preventative measures to address all categories of past unintentional discharges. These actions include a plan to prevent reoccurrence of unintended discharge from a portion of the site known as "Area A" and in the corridor that connects Area A and Area B by ceasing the manufacture of certain chemicals called acetic anhydride in Area A, which are currently transported to Area B through the corridor by pipeline or truck. These chemicals are

[PROPOSED] CONSENT DECREE
6

required for explosives manufacturing, and BAE Systems is developing the ability to manufacture them in Area B rather than Area A;

WHEREAS, BAE Systems has voluntarily conducted testing beyond its permit obligations in order to determine whether and to what extent RDX exists at stormwater outfalls at Area B of the HSAAP. The results of these tests will be reported to TDEC and TCWN within 30 days of receipt;

WHEREAS, the Parties have engaged in settlement negotiations in an attempt to resolve Plaintiff's claims;

WHEREAS, the Parties enter into this Consent Decree for the purposes of settlement and the Consent Decree does not constitute an admission by Defendants of any fact or legal theory or of any violation of federal law or regulation;

WHEREAS, the Parties agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties at arm's length and in good faith, that settlement of this matter will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest;

THEREFORE, with the consent of the Parties to this Decree, it is ORDERED, ADJUDGED, AND DECREED:

## II. JURISDICTION AND VENUE

1. This Court has jurisdiction to enter this Consent Decree pursuant to 33 U.S.C. § 1365(a), 42 U.S.C. § 6972(a), and 28 U.S.C. § 1331.

2. Pursuant to 33 U.S.C. § 1365(c)(1), 42 U.S.C. § 6972(a), and 28 U.S.C. § 1391(e)(2), venue lies in this judicial district because the HSAAP is located in, and the actions alleged in the Complaint occurred in, this judicial district.

3. Solely for purposes of this Consent Decree and any action to enforce this Consent Decree, Defendants consent to this Court's jurisdiction and to venue in this judicial district.

## III. APPLICABILITY

4. The provisions of this Consent Decree shall apply to, inure to the benefit of, and be binding on Plaintiff, Defendants, and the Parties' officers, directors, employees, and agents, and any successors in interest and assigns, as to matters that might reasonably include compliance with any provisions of this Decree.

## IV. DEFINITIONS

5. Except as otherwise provided herein, the terms used in this Consent Decree shall have the meaning given those terms in the CWA, 33 U.S.C. § 1362, and the CWA's implementing regulations. The following terms, as used in this Consent Decree and for purposes of this Decree only, are defined as follows:

    a) "Compliance Agreement" shall mean the Compliance Agreement between TDEC, BAE Systems and Army, which is identified by TDEC case number WPC12-0140 and is dated August 27, 2014.

    b) "Consent Decree" shall mean this Consent Decree and all attachments to this Consent Decree, and any modifications to this Consent Decree.

    c) "Day" shall mean a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

    d) "Effective Date" shall mean the date on which this Consent Decree is entered by the Court.

    e) "Exceedance" shall mean that the monthly average concentration of RDX discharged from Outfall 020, as these terms are used in NPDES Permit No. TN0003671 or any subsequent permit that may replace NPDES Permit No. TN0003671, is above the Permit Limit.

    f) "Month" shall mean a calendar month. In computing any period of time expressed in months in this Consent Decree, a month shall begin on the first day measured by a HSAAP monthly DMR and end on the last day measured by the same HSAAP monthly DMR.

g) "Outfall 020" shall mean the primary wastewater outfall at the HSAAP, which discharges water from the IWWTP into the Holston River.

h) "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an uppercase or lowercase letter.

i) "Permit Limit" shall mean the maximum concentration of a pollutant that may be discharged from Outfall 020 under NPDES Permit No. TN0003671 or any subsequent permit that may replace NPDES Permit No. TN0003671.

j) "Section" shall mean a portion of this Consent Decree identified by a capitalized Roman Numeral.

k) "TDEC" shall mean the Tennessee Department of Environment and Conservation.

## V. INJUNCTIVE RELIEF

6. Defendants shall comply with the Permit Limit then in effect for RDX at Outfall 020 in or before July 2020, as reflected in monthly HSAAP Discharge Monitoring Reports (DMRs).

7. The obligations set forth in Paragraphs 6 shall be considered fully discharged when no RDX exceedance has occurred at Outfall 020 for any consecutive nine-month period, as reflected in HSAAP monthly DMRs.

8. BAE Systems shall send Plaintiff copies of all interim status reports required by TDEC under the Compliance Agreement, as well as all DMRs required by the above referenced NPDES permits at the same time such reports are provided to TDEC, through the date when the obligations set forth in Paragraph 6 have been fully discharged. Reports under this Paragraph may be sent by either electronic mail, U.S. Mail, overnight express mail, or hand delivery, but should otherwise comply with Section IX.

9. As soon as practicable, but no later than December 31, 2016, BAE Systems shall cease transport of acetic anhydride from Area A to Area B. BAE shall notify Plaintiff when this has occurred. Federal Defendants reserve the right to use Area A for other purposes.

## VI. FORCE MAJEURE

10. For purposes of this Decree, "force majeure" is defined as any event arising from one or more causes beyond Defendants' control, which delays or prevents Defendants' performance of

or compliance with any obligation or requirements of this Consent Decree, despite best efforts otherwise to fulfill the obligation or meet the requirement in question. "Best efforts" include addressing the effects of any force majeure event to prevent or minimize any resulting delay, non-performance, or non-compliance. The events below are "force majeure" events if they meet the criteria above.

    a) Acts of God, fire, war, insurrection, terrorism, or civil disobedience.

    b) Military engagement.

    c) Bid protest or any litigation regarding the award of a contract related to the requirements of this Consent Decree.

    d) Restraint by court order.

    e) Lack of availability of supplies or labor or lack of responsive bids, as set forth in Federal Acquisition Regulation (FAR) Parts 14 and 15, from qualified contractors in response to solicitations for bids. 'Lack of availability,' when used in this Section, means that Defendants are unable to perform the obligation in and/or meet the requirements of this Consent Decree while complying with all applicable statutes and regulations, including but not limited to the FAR.

    f) Government shutdown or agency-wide prohibition of work by certain personnel.

    g) Inability to lawfully obtain after reasonable diligence necessary approvals, permits, or licenses, including approvals from the Department of Defense Explosives Safety Board.

    h) Lack of appropriated funds.

    i) Weather events that individually or cumulatively impact the construction schedule.

    j) Relevant material change in the permit.

    k) Change in applicable requirements under international, Federal or State laws, regulations or authorities that delays performance.

11. If Defendants' delay, non-performance or non-compliance is attributable to a force majeure event, the time for performance of or compliance with the applicable obligation or

[PROPOSED] CONSENT DECREE
10

Case 2:14-cv-00336-RLJ-MCLC   Document 26   Filed 10/01/15   Page 10 of 19   PageID #: 154

requirement of the Consent Decree shall be extended as necessary to complete the obligation or requirement.

12. If the Parties do not concur that a force majeure event has occurred, or the Parties do not concur on the amount of time to complete the obligation or requirement affected by the force majeure event, Plaintiff or Defendants may invoke the Dispute Resolution procedure under Section VIII or may petition the Court for a modification pursuant to Section XIII.

**VII. ANTI-DEFICIENCY ACT**

13. Notwithstanding any other provision of this Decree, the obligations of this Decree are subject to the availability of appropriated funds. No provision of this Decree shall be interpreted as or constitute a commitment or requirement that the United States obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341.

**VIII. DISPUTE RESOLUTION**

14. Except as provided for in Sections VI (Force Majeure) and XIII (Modification), the dispute resolution procedure provided for in this Section VIII shall be the exclusive mechanism to resolve disputes and disagreements arising under or with respect to this Consent Decree. The Parties shall make all reasonable efforts to resolve their disputes and disagreements regarding the meaning of, compliance with, and/or implementation of this Consent Decree informally and in good faith prior to seeking any relief from the Court.

15. If any Party has a dispute concerning the meaning of, compliance with, and/or implementation of this Consent Decree, that Party shall send a written notice to all other Parties that specifies the nature of the dispute and requests resolution of the dispute.

16. Upon receipt of written notice pursuant to Paragraph 15, the Party receiving such notice shall either send the other Party written notice within 21 days of receipt that it intends to cure and shall cure the alleged deficiency within 90 days; or, if the Party receiving the notice is unable to cure the alleged deficiency or disputes the alleged deficiency, that Party receiving such notice shall provide written notice to this effect to all Parties within 21 days of receipt.

17. If the Party receiving the notice pursuant to Paragraph 15 disputes the alleged deficiency, the Parties shall initiate informal negotiations to resolve the dispute. Such period of informal

negotiations shall not extend beyond 90 days from the date on which the Party receiving the notice requests such negotiations, unless the Parties agree otherwise in writing. If Defendants fail to remedy the alleged violation or reach an agreement with the Plaintiff during the 90-day informal negotiation period concerning the alleged violation, Plaintiff may file a motion seeking appropriate relief from the Court, subject to Section XI below.

18. Plaintiffs agree not to seek relief for alleged delays or non-performance of or non-compliance with requirements of the Decree unless all reasonable efforts, as set forth in this Section, to resolve the dispute informally between the Parties have failed and Defendants have unreasonably delayed compliance with, or unreasonably failed to perform their obligations under or to comply with, the obligations and requirements of this Consent Decree.

19. In addition to the foregoing pre-requisites for judicial relief, Plaintiff agrees not to seek civil contempt sanctions or civil penalties against the Federal Defendants. Plaintiff reserves the right to seek contempt sanctions or civil penalties against BAE Systems with respect to an alleged violation of this Consent Decree or any other order from the Court requiring action to remedy an alleged violation of this Consent Decree. In any such proceeding for sanctions or civil penalties, Defendants preserve all defenses.

**IX. NOTICES**

20. All notices, submissions and communications made pursuant to this Consent Decree shall reference the title, caption and case number of this action, and, unless otherwise noted, shall be sent via certified U.S. Mail, overnight express mail, or hand delivery to the recipients and addresses below, and may be copied to the recipients below by electronic mail. Notices shall be considered delivered upon receipt, and compliance periods requiring notices shall commence starting with the date of receipt.

**To Plaintiff:**

    Stephanie Durman, General Counsel

    Tennessee Clean Water Network

    P.O. Box 1521, Knoxville, TN 37901

    stephanie@tcwn.org

**To Federal Defendants:**

    United States Army Legal Services Agency
    Environmental Law Division
    Attn: Chief, Litigation Section
    9275 Gunston Road, Ste. 4300, Fort Belvoir, VA 22060
    (703) 614-3897

    Headquarters, U.S. Army Materiel Command
    Office of the General Counsel
    Attn: AMCCC-G (Mr. German)
    4400 Martin Road, Redstone Arsenal, Alabama 35898
    john.m.german.civ@mail.mil

    Samara M. Spence, Trial Attorney
    U.S. Department of Justice, Environment & Natural Resources Division
    P.O. Box 7611, Washington, DC 20044-7611
    samara.spence@usdoj.gov

    U.S. Department of Justice
    Environment & Natural Resources Division
    Chief, Environmental Defense Section
    P.O. Box 7611, Washington, DC 20044-7611

To BAE Systems:

    Vice President and Chief Counsel

    BAE Systems Platforms & Services

    2000 North 15th Street, Suite 1100

    Arlington, VA 22201

    alice.eldridge@baesystems.com


    Legal Counsel

    BAE Systems, Ordnance Systems Inc.

    4050 Peppers Ferry Road

    Radford, VA 24141

    benjamin.kacher@baesystems.com

21. Any Party may change its designated recipient(s) and/or address(es) by providing written notice of such change to all other Parties.

22. Unless otherwise provided by this Consent Decree or by written agreement of the Parties, any notices, submissions and communications required pursuant to this Decree shall be deemed submitted upon mailing or electronic mailing.

## X. COMPLIANCE WITH APPLICABLE LAWS

23. Nothing in this Consent Decree relieves Defendants of their responsibility to comply with all applicable federal, state and local laws and regulations.

## XI. EFFECT OF SETTLEMENT AND RESERVATION OF RIGHTS

24. This Consent Decree resolves any and all claims that have been brought, or that arose prior to termination of this Consent Decree under Section XVI and that reasonably could have been brought by Plaintiff as alleged in the Complaint, and Plaintiff releases any and all such claims.

[PROPOSED] CONSENT DECREE
14

Case 2:14-cv-00336-RLJ-MCLC   Document 26   Filed 10/01/15   Page 14 of 19   PageID #: 158

25. This Consent Decree does not limit or alter the rights of any Party against any third party who is not a Party to this Decree. This Consent Decree shall not be construed to create any rights or grant any cause of action to any third party who is not a Party to this Decree.

26. Nothing in this Consent Decree shall be construed as precluding or restricting any right of the United States, including its agencies, to procure from the HSAAP RDX or other explosives, as determined in their discretion based on military and national defense needs.

27. Nothing in this Consent Decree affects the rights of state or federal regulators.

## XII. COSTS OF LITIGATION

28. Defendants stipulate that Plaintiff is a "prevailing party" within the meaning of 33 U.S.C. § 1365(d). The Parties will attempt to separately resolve the amount of any claims for costs of litigation (including reasonable attorney's fees). In the event the Parties are unable to reach agreement within a reasonable time, Plaintiff reserves the right to file an application with the Court for such costs. In any event, BAE Systems and Federal Defendants will each pay one-half of any such costs paid.

## XIII. MODIFICATION

29. Any Defendant may seek to modify the terms of this Consent Decree for good cause. Before seeking modification from the Court, such Defendant must first send a written notice to Plaintiff. Upon receiving notice, Plaintiff shall initiate informal negotiations to attempt to reach a written agreement regarding modification. Such period of informal negotiation shall not exceed 14 days. If agreement is reached, the Parties shall file a joint stipulation to the Court for any such modification. If an agreement is not reached, Defendants may seek modification from the Court, and Plaintiff may oppose such modification. Except as otherwise provided above, no material modification of this Consent Decree may be made absent a joint stipulation of all the parties and/or a Court order.

30. Notice and informal negotiation specified in Paragraph 29 is not required if such delay would result in non-compliance of the terms of the Consent Decree during the notice and negotiation period.

## XIV. RETENTION OF JURISDICTION

31. The Court shall retain jurisdiction of this matter for all purposes, including jurisdiction to resolve any dispute arising under this Consent Decree and to enforce or modify this Decree, until termination of the Decree pursuant to Section XVI (Termination).

## XV. FINAL JUDGMENT AND WAIVER OF APPEAL

32. Upon entry by the Court, this Consent Decree shall constitute a final judgment, from which no appeal shall be taken except with respect to subsequent orders of the Court.

## XVI. TERMINATION

33. This Consent Decree shall be terminated when all obligations under Section V (Injunctive Relief) have been discharged and all matters related to costs of litigation (including attorney's fees) have been resolved.

## XVII. SIGNATORIES AND COUNTERPARTS

34. Each signatory of this Consent Decree certifies that he or she is fully authorized to enter into this Decree, to agree to its terms and conditions, and to execute and legally bind the Party he or she represents.

35. This Consent Decree may be executed in counterparts.

## XVIII. INTEGRATION CLAUSE

36. This Consent Decree constitutes the final, complete and exclusive agreement and understanding between the Parties, and supersedes all prior agreements and understandings, whether oral or written, with respect to the claims in this case. No other document, nor any representation, agreement, understanding or promise, is part of this Consent Decree, nor may such be used in construing the terms of this Decree.

IT IS SO ORDERED

Dated, entered, and made effective this 30th day of SEPT, 2015.

_____
HONORABLE R. LEON JORDAN
UNITED STATES DISTRICT JUDGE

[PROPOSED] CONSENT DECREE
16

Case 2:14-cv-00336-RLJ-MCLC   Document 26   Filed 10/01/15   Page 16 of 19   PageID #: 160

*For Federal Defendants:*

Dated 9/25/2015

[signature]

JOHN C. CRUDEN
Assistant Attorney General
United States Department of Justice
Environmental and Natural Resources Section

SAMARA M. SPENCE (BPR No. 031484)
Trial Attorney
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044-7611
(202) 514-2285
Samara.spence@usdoj.gov

*For Defendant BAE Systems:*

Dated August 19, 2015

*(signature)*
MICHAEL K. STAGG (BPR No. 017459)
Waller Landsden Dortch & Davis, LLP
511 Union St., Ste. 2700
Nashville, TN 37219
(615) 244-6380
Michael.stagg@wallerlaw.com

For Plaintiff Tennessee Clean Water Network:

Dated August 13, 2015

*Stephanie A. Durman*
STEPHANIE A. DURMAN (BPR No. 027783)
General Counsel
Tennessee Clean Water Network
P.O. Box 1521
Knoxville, TN 37901
(865) 522-7007 x102
Stephanie@tcwn.org

GARY A. DAVIS (BPR No. 009766)
JAMES S. WHITLOCK (N.C. Bar No. 34304)
Davis & Whitlock, P.C.
21 Battery Park Ave.
Ashville, NC 28801
(828) 622-0044
(828) 398-0435
Gadavis@enviroattorney.com
Jwhitlock@enviroattorney.com